IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

DALE A. GORECKI,

    Plaintiff,

v.

CITY OF CAMBRIDGE, et al.,

    Defendants.

CASE NO. C2-07-420
JUDGE EDMUND A. SARGUS, JR.
MAGISTRATE JUDGE TERENCE P. KEMP

## OPINION AND ORDER

This matter is before the Court for consideration of the Defendants' Motion for Summary Judgment. For the reasons that follow, this Motion is GRANTED IN PART.

**I.**

Plaintiff Dale A. Gorecki brings this action against the City of Cambridge, Ohio, Safety Director John J. Jones, Chief of Police Richard Wayt and Cambridge Police Officers Williams, Ferguson, Delancy, Milburn and Hall. The Complaint seeks to invoke this Court federal question subject matter jurisdiction based upon an alleged violation by the Defendants of the Plaintiff's civil rights, in violation of 42 U.S.C § 1983.[1]

Plaintiff contends that the Defendant officers (1) unreasonably seized and detained him; (2) used excessive force in arresting him; (3) denied him proper medical care; and (4) maliciously prosecuted him. He also contends that the City of Cambridge, its Mayor, Police Chief, and Safety Director failed to investigate the allegedly unconstitutional amount of force

---

[1] In Paragraph 3 of the Complaint, the Plaintiff seeks to invoke this Court's supplemental jurisdiction to hear state claims related to claims within this Court's federal question jurisdiction citing 18 U.S.C. § 1367(a). The Complaint, however, does not allege any state claims.

used against him thereby rendering them liable in their official capacities for a practice or policy of the municipality.

## II.

This case involves an incident which occurred in the early morning hours on May 14, 2005. It is undisputed that Gorecki and a female companion, Lori Dunning, went to the bar at Holiday Inn in Cambridge, Ohio, arriving at approximately 1:00 a.m. (Gorecki Dep. at 99). Later, as Gorecki and Dunning were leaving the bar, they walked into a fist fight involving approximately thirty individuals gathered at the exit of the bar. (Gorecki Dep. at 107). As Gorecki walked by, a participant threw a drink on him. In response, Gorecki told them that he was a retired police officer and he didn't want any trouble. (Gorecki Dep. at 113). According to Gorecki, they responded by saying they were "going to kick [his] f.... ass." (Gorecki Dep. at 114).

Gorecki then went to his truck, which was parked nearby. The license plate on the truck was "I4NI." Gorecki removed a handgun from the truck and "pulled it out and showed them." (Gorecki Dep. at 115). Gorecki testified in his deposition that the persons making the threats then "backed off." (Gorecki Dep. at 115).

Thereafter, at 2:46 a.m., the 911 dispatcher relayed to on-duty Cambridge police officers the following, "White male with a handgun causing trouble in front. Attempting to get in a black Dodge pickup truck Ohio Registration 1FORN1..."

Gorecki, meanwhile, got into his truck and was swinging around to pick up Dunning. To do so, he exited the Holiday Inn parking lot and was on a public road at the time police cruisers pulled him over.

2

According to Gorecki, several of the Defendant officers drew their guns and ordered him out of the car and told him to put his hands over his head. (Gorecki Dep. at 122). Gorecki claims he did both. Gorecki stood about ten feet from the truck, when he was ordered to turn around away from the officers. He was asked at least twice to face the truck and he did not comply. (Gorecki Dep. at 125). Instead, he told the officers that he was a retired police officer, that he was not armed, and that he had a gun in the truck. (Gorecki Dep. at 125).[2] Gorecki was then told to get on his knees and place his hands behind his head. (Gorecki Dep. at 124). Gorecki testified at the deposition that he could not say whether he went down on his knees. (Gorecki Dep. at 129).

Gorecki was then taken to the ground. He was positioned face down. According to Gorecki, an officer "stomp[ed] his foot on the back of my head." (Gorecki Dep. at 132). Gorecki testified that this happened several times. He also testified that no one was holding him down at that time. (Gorecki Dep. at 132). Gorecki also stated that as he tried to cover his head, he was then kicked in the ribs. (Gorecki Dep. at 133). He testified that this back and forth happened several times. During this time, he was not handcuffed. (Gorecki Dep. at 133). Once he was handcuffed, no further kicking occurred. (Gorecki Dep. at 133).

The only other witness to the incident whose deposition or sworn testimony was submitted in conjunction with his motion was Officer Mark Delancy. He described standard methods by which a resisting individual could be forced on the ground by police to submit to handcuffing. One standard method, according to Delancy, was striking large muscle groups such

---

[2] Gorecki was a police officer from 1989 to 2004 in Brooklyn, Ohio. He retired on disability in 2004.

3

as the legs, thighs, or back. (Delancy Dep. at 20). He specifically testified that this standard police procedure did not involve striking the head. *Id.*

Delancy testified that Gorecki did not comply with commands and, after being taken to the ground, continued to flail his arms and legs and wrestled with the officer. (Delancy Dep. at 41, 75). Delancy testified at deposition "that blows needed to be delivered to Mr. Gorecki" to place him in handcuffs. (Delancy Dep. at 74). He also testified that no blows were struck after Gorecki was handcuffed. (Delancy Dep. at 73).

Delancy stated that other officers delivered some strikes to Gorecki to force him into handcuffs. He testified that these blows were "to his torso area, or his legs. I am not sure." (Delancy Dep. at 31). He also noted that he was blocked from seeing one officer who may have delivered blows. (Delancy Dep. at 31, 32).

Gorecki was handcuffed and was placed in a cruiser. He demanded that he be taken to a hospital, which the officers did. He was seen at a hospital in Cambridge by Dr. Eric Fete, whose affidavit has been filed. (Fete Aff., Doc. 53-1). Dr. Fete averred that he examined Gorecki and ordered x-rays. (Fete Aff., ¶ 8). Dr. Fete observed contusions and abrasions to Gorecki's face and nose, with no fractures of any bones. (Fete Aff., ¶ 9). Dr. Fete also swore that he detected a slight smell of alcohol. (Fete Aff., ¶ 10).

Gorecki was then taken to the Guernsey County Jail and was released in the morning. Several hours later, Gorecki was charged with (1) aggravated menacing; (2) use or possession of a weapon while intoxicated; (3) obstructing official business; (4) improper handling of firearms in a motor vehicle; (5) resisting arrest; and (6) carrying a concealed weapon. (Ferguson Aff., ¶ 5).

4

Thereafter, Gorecki pleaded guilty to one charge of improperly handling of firearms in a motor vehicle and one charge of aggravated menacing. (Ferguson Aff., ¶ 8). In exchange, other charges were dismissed. Both charges to which Gorecki pleaded guilty were first degree misdemeanors with penalties up to 180 days imprisonment and fines of up to $1,000. O.R.C. § 2929.24(A)(1).

The record also includes an affidavit from Joyce Gorecki, spouse of the Plaintiff. She avers that she, ". . . spoke to John Reed. Mr. Reed informed me that Dale has been arrested. He also said that he had a girlfriend, that officers who arrested Dale beat him up, and that my husband received the beating he deserved." (Joyce Gorecki Aff., ¶ 5). Joyce Gorecki also stated:

> In explaining to me how Dale was beaten during his arrest, Mr. Reed said, "What goes around, comes around." John Reed was referring to a earlier domestic violence claim that I had against Dale for physically assaulting me. Reed was telling me that Dale was assaulted by the officers when he was arrested. Reed responded to the domestic violence charge, and he knew the extent of my injuries - which included broken ribs and an contusions to my face. Reed specifically, said that the officers gave Dale the same injuries.

(Joyce Gorecki Aff., ¶ 6).

The Plaintiff also submitted the affidavit of Robert Danford. According to Danford, he spoke to Officer Delancy who told him that Gorecki had been "badly beaten during the arrest." (Danford Aff., ¶ 5). Danford also swore that Delancy told him that he "wanted to or wished he could have shot or blown Dale away with his gun during the arrest." (Danford Aff., ¶ 6).

5

## III.

The procedure for considering whether summary judgment is appropriate is set forth in Federal Rule of Civil Procedure 56(c). Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In reviewing a motion for summary judgment, we view all facts and any inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment is proper if no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. *Peck v. Bridgeport Machs., Inc.*, 237 F.3d 614, 617 (6th Cir.2001).

> At the summary judgment stage, the moving party bears the initial burden of identifying those parts of the record which demonstrate the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). However, if the moving party seeks summary judgment on an issue for which it does not bear the burden of proof at trial, the moving party may meet its initial burden by showing "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. When the moving party has carried forward this burden, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. The non-moving party may not rest upon its mere allegations or denials of the adverse party's pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial. *Id.*; *accord* Fed. R. Civ. P. 56(e)(2).

*White v. Baxter Healthcare Corp.*, 533 F.3d 381, 389-90 (6th Cir. 2008), *cert. denied*, 129 S. Ct. 2380 (2009). A scintilla of evidence in support of the plaintiff's position will be insufficient; rather, evidence must exist on which the jury can reasonably find in favor of the plaintiff. *Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986). The Court "must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or

weigh the evidence." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133 (2000).

IV.

Section 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983. Section 1983 itself creates no substantive rights, but merely provides a mechanism for aggrieved persons to obtain a remedy for deprivations of rights established elsewhere. *Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985). Section 1983 has two basic requirements: (1) state action that (2) deprived an individual of federal statutory or constitutional rights. *Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998); *United of Omaha Life Ins. Co. v. Solomon*, 960 F.2d 31, 33 (6th Cir. 1992). Plaintiff brings four separate claims under Section 1983, which the Court addresses *seriatim*.

A. **Claim of Unreasonable Seizure and Detention**

The Plaintiff contends that his arrest and detention were in violation of the Fourth Amendment to the Constitution. The Fourth Amendment provides that citizens shall be free from "unreasonable searches and seizures, and no Warrants shall issue, but upon probable cause . . ." U.S. Const. amend. IV. As it relates to this case, the Constitution requires that the officers had probable cause to believe that Gorecki had committed a crime for which he could be arrested.[3] As the Court of Appeals for the Sixth Circuit has noted, "'any arrest without probable

---

[3] Ohio law provides that an officer may arrest a suspect upon probable cause for all of the offenses charged against Gorecki and all of the charges to which he subsequently pleaded guilty. Ohio

7

cause violates the Fourth Amendment.'" *Thacker v. City of Columbus*, 328 F.3d 244, 256 (6th Cir. 2003)(quoting*Crockett v. Cumberland College*, 316 F.3d 571, 580 (6th Cir. 2003)).

The Defendants submit that the following, undisputed facts establish probable cause:

1. At 2:56 a.m., the dispatcher radioed to the officers that a man with a gun was causing trouble at the Holiday Inn;

2. The dispatcher relayed that the man was getting into a black Dodge Truck with the license plate IFORNI;[4]

3. The officers responded and pulled over a black Dodge Truck with the same license plate near the Holiday Inn;

4. The officers ordered Gorecki out of the truck;

5. The officers told Gorecki to turn around away from the officers, which he refused after at least two commands;

---

Rev. Code § 2935.03(A)(1) provides that "[a] sheriff, deputy sheriff, marshal, deputy marshal, municipal police officer, township constable, police officer . . . shall arrest and detain, until a warrant can be obtained, a person found violating, within the limits of the political subdivision . . . an ordinance of a municipal corporation, or a resolution of a township."

[4]Gorecki's vehicle was a black Dodge truck, albeit the license plate was somewhat different, actually I4NI, which is phonetically the same as IFORNI.

8

6. Gorecki remained a short distance from the open door of the truck and told the officers he had a gun in the vehicle;

7. Gorecki was told to get on his knees and place his hands behind his head, which Gorecki says he does not remember doing.

In this Court's view, the officers had clear probable cause to arrest and detain Gorecki. The incident occurred at 3:00 a.m. and was in the parking lot closest to the Holiday Inn bar. There is no dispute that the Plaintiff's vehicle was accurately described. The Plaintiff admits that, before the officers arrived, he had displayed a firearm in the parking lot. The Plaintiff also admitted to the officers that he had a gun in the car. Even disregarding his failure to obey the officer's commands, the officers had probable cause to arrest and detain Gorecki.

The Defendants are entitled to summary judgment on Plaintiff's claim of unreasonable arrest and seizure.

## B. Claim that Plaintiff Was Denied Medical Care

Plaintiff claims that he was denied proper medical care following the injuries he received in the course of his arrest. This claim arises under the Eighth Amendment which prohibits "cruel and unusual punishments."

In *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976), the Supreme Court held that a prisoner must show that he or she had a serious medical condition and the defendants showed a deliberate indifference to the detainee's health. From the undisputed evidence, Plaintiff can establish neither of these requirements.

Plaintiff received contusions and abrasions to his face and nose. He also received a black eye. By themselves, these injuries were not a serious medical condition. The conclusion would be otherwise if the Plaintiff suffered broken bones or a concussion. Not able to determine the degree of the Plaintiff's injuries, the officers took Gorecki to a hospital where x-rays were taken and an analysis provided by a physician, verifying that Gorecki's injuries were limited to contusions and abrasions. No further treatment was recommended.

The record is devoid of any evidence that the Defendants were deliberately indifferent to a serious medical condition. The Defendants are entitled to summary judgment on this claim.

## C. Claim that the Plaintiff Was Maliciously Prosecuted

In *Thacker,* the Court of Appeals held that in a federal malicious prosecution claim "it is clear that a plaintiff must show, at a minimum 'that there was no probable cause to justify [his] arrest and prosecution.'" 328 F.3d at 259 (quoting *Darrah v. City of Oak Park,* 255 F.3d 301, 312 (6th Cir. 2001)).

For the same reasons listed in Section IV(A) of this Opinion with respect to his claim of unreasonable search and seizure under the Fourth Amendment, the Court finds that the charges filed against the Plaintiff were based upon probable cause. Each of the originally filed five charges was based upon probable cause, given the circumstances known to the officers. Additionally, Gorecki pleaded guilty to the improper handling of firearms in a vehicle and aggravated menacing. He has presented no evidence to undermine the original charges or those to which he pleaded guilty.

10

The Court does not read the Plaintiff's Complaint to include a state law claim for malicious prosecution. In an abundance of caution, a state law claim of malicious prosecution requires that the charges brought must be resolved in the Plaintiff's favor. *See, e.g., Friedman v. U.S.*, 927 F.2d 259 (6th Cir. 1991); *Trussell v. General Motors Corp.*, 53 Ohio St. 3d 142, 559 N.E.2d 732 (Ohio 1992). Here, Gorecki pleaded guilty to two of the original charges. He cannot satisfy the elements of a state claim for malicious prosecution.

The Defendants are entitled to summary judgment on the claims for malicious prosecution.

### D. (1) Alleged Use of Excessive Force

The right of a citizen to be free from the exercise of excessive force by a police officer is well established. In *Graham v. Connor*, 490 U.S. 386, 396 (1989), the Supreme Court recognized that "the right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." The Supreme Court emphasized the analysis "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.*

The Supreme Court also emphasized that whether the force used was reasonable "is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motiviation." *Id.* at 397. Relevant to this case is the Supreme Court's holding that "[a]n officer's evil intentions will not make a Fourth Amendment violation out of an objectively

11

reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional." *Id.*

As to the last dictum, the Court disregards the affidavits of Joyce Gorecki and Robert Danford. Whether the use of force was reasonable or unreasonable does not depend upon any claimed motivation of the officers. It is conduct, not intent or motive, that is to be analyzed.

In undertaking the analysis, the Court must consider two competing requirements. The first is that the conduct of the officers must be viewed in the context in which it occurred– the time of day, the location, the suspected conduct, the risk to officer safety and the danger to the public. What is reasonable under the circumstances is not to be second guessed by a judge given the luxury of time to dissect the conduct.

The second consideration is that a party is entitled to a trial unless, through the summary judgment process, the party demonstrates that there is no genuine issue of material fact. Here, the only evidence presented as to the degree of force used by the Defendants comes from the Plaintiff and Officer Delancy. If the testimony is in conflict, a jury must resolve the disputed issue.

Gorecki contends that he was thrown to the ground and repeatedly kicked in the head and ribs. He acknowledges that the kicking stopped when he was handcuffed. He specifically stated in his deposition that an officer "stomped[ed] his foot on the back of my head" several times. (Gorecki dep. at 132).

Officer Delancy testified at deposition that blows had to be delivered to Gorecki to get him into handcuffs, which he was actively resisting. He also noted that no blows were delivered once Gorecki was handcuffed. He was not able to see one officer delivering blows.

12

Officer Delaney also testified that, while striking a major muscle group is standard procedure in forcing a suspect into handcuffs, this procedure would not involve striking the head.

There is no doubt that the officers were entitled to use the force necessary to place Gorecki into handcuffs. The Court assumes for purposes of this motion that striking a resisting suspect in the ribs while on the ground constitutes reasonable use of force. The Court also assumes that the placement of an officer's foot on the back of a suspect's neck or head may be a reasonable use of force when the suspect is resisting arrest.

Plaintiff contends under oath that he was stomped in the back of his head by an officer's shoe as he lay face down on the ground, thereby causing his contusions and abrasions. He testified that this occurred several times.

In considering whether to grant summary judgment, this Court does not weigh the testimony, which only a jury can. The Court's function is to determine whether competent evidence supports a claim, not how believable it may be.

If Gorecki is believed, an officer repeatedly stomped the back of his head with his foot as Gorecki was face down on the pavement. His testimony creates a genuine issue of material fact on the issue of the reasonableness of the use of force.

As to this claim, the Defendant's Motion for Summary Judgment is denied.

### D.(2) **Qualified Immunity**

The Defendants also ask this Court to find on this claim that they are shielded by qualified immunity. In *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982), the Supreme Court held that governmental officials performing discretionary functions are not liable for damages unless the official violated a clearly established statutory or constitutional right.

The right of a citizen to be free of unreasonable force has been clearly established for decades. The Supreme Court decision in *Graham, supra*, is now twenty years old.

The legal standard upon which to assess the reasonableness of the force is clear; in this case, it is only the facts which are in dispute. For this reason, the Court finds that the Defendants are not entitled to qualified immunity.

E.  **Liability of the City of Cambridge, the Mayor, Safety Director and Police Chief**

Gorecki contends that the City of Cambridge, its Mayor, Safety Director, Chief of Police and Sergeant Hall, all Defendants, are liable for the failure to investigate the use of force by the defendant officers. Gorecki contends that this alleged failure to investigate constitutes a policy or custom of the municipality. The Court views this argument as a claim that the City and its officials, including Hall, are liable in their official capacities. Claims brought in an official capacity against the Mayor, Safety Director, Chief of Police and Hall are treated as claims against the municipality. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)(holding that in an official capacity lawsuit, the real party in interest is the governmental entity of which the official is an agent); *Doe v. Clairbonre County, Tenn.*, 103 F.3d 495, 509 (6th Cir. 1996)(noting suits against local officials are treated as suits against the municipality).

"A municipality cannot be liable *solely* because it employs a tortfeasor– or, in other words, a municipality cannot be held liable under § 1983 on a *respondent superior* theory." *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 691 (1978). A plaintiff must establish that an official policy or custom leads to the constitutional violation, before a municipality is liable. *Id.* While a policy is an officially adopted measure, a custom is a more informal course of conduct in which the municipality has acquiesced.

14

As held in *Powers v. Hamilton County Public Defender Com'n,*:

> The *Monell* Court described a municipal policy as including "a policy statement, ordinance, regulation, or decision officially adopted and promulgated. . . ." An actionable "custom," in contrast, "has not received formal approval through . . . official decisionmaking channels." . . . A § 1983 plaintiff may establish the existence of a custom by showing that policymaking officials knew about and acquiesced in the practice at issue. . . .
>
> Where a municipal-liability claim is premised on an "inaction theory," the plaintiff must prove (1) the existence of a clear and persistent pattern of violating federal rights . . . ; (2) notice or constructive notice on the part of defendants; (3) the defendants' tacit approval of the unconstitutional conduct, such that their deliberate indifference in failing to act can be said to amount to an official policy of inaction; and (4) that the defendants' custom was the "moving force," or direct causal link for the constitutional deprivation. . . .

501 F.3d 592, 607 (6th Cir. 2007)(citations omitted).

In this case, Gorecki has failed to present any evidence of "a clear and persistent pattern of violating federal rights." *Id.* He has also failed to provide any evidence of actual notice or constructive notice on the part of the Defendants sued in an official capacity.

Gorecki has submitted a report of Michael J. Massey, who was offered as an expert witness. The report focuses primarily, though not exclusively, on whether the police department followed its own policies regarding follow-up investigations once force has been used by an officer. This inquiry is misfocused. Whether or not the department followed its own procedures is not the issue. The question is whether a federal constitutional or statutory right was violated through a policy or custom. *Monell* at 691.

The report makes only passing references to a Marsha McHenry and Larry Mackie. Both were apparently the subjects of excessive use of force investigations. A third person named Vaughn is described as being injured, though not photographed by the police.

15

None of the three reports were submitted as evidence in this case. No other reference is made, including dates, circumstances or reports. Massey states that two reports show no injury, while both were taken to the hospital. From this alone, the Court can find no evidence or draw any inference that excessive force was used, that there is a clear, persistent pattern of excessive force, or that the defendants were deliberately indifferent to violations of the Constitution.

The Court finds that the City of Cambridge and the Defendants sued in an official capacity are entitled to summary judgment.

V.

Based upon the foregoing, the Defendants' Motion for Summary Judgment is **GRANTED** as to all claims other than that of excessive force. The individually named Defendants are not entitled to qualified immunity.

**IT IS SO ORDERED.**

9-24-2009
**DATE**

**EDMUND A. SARGUS, JR.**
**UNITED STATES DISTRICT JUDGE**